NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

HENRY RUIZ,

      Plaintiff,

   v.

MORRIS COUNTY SHERIFF'S DEPARTMENT,
FRANK CORRENTE, EDWARD ROCHFORD,
RALPH McGRANE, and JONH DOES 1 through 10

      Defendants.

CIVIL ACTION NO. 05-1825
(DRD)

**OPINION**

Appearances

PARAGANO & RICHLAN, P.C.
Vincent Paragano, Esq.
5 Seney Drive
Bernardsville, New Jersey 07924
    *Attorneys for Plaintiff*

JACOBS ROSENBERG, LLC
Roger B. Jacobs, Esq.
Gateway Four, 3rd Floor
100 Mulberry Street
Newark, New Jersey 07102
    *Attorneys for Defendant Frank Corrente*

LAUFER KNAPP, TORZEWSKI, & DALENA, LLC
James T. Prusinowski, Esq.
23 Cattano Avenue
At Chancery Square
Morristown, New Jersey 07960
    *Attorneys for Defendants Morris County Sheriff's Department and Sheriff Edward
Rochford*

### *OPINION*

### DEBEVOISE, Senior District Judge

This action was commenced by Plaintiff, a Morris County Sheriff's Department ("MCSD") Correctional Officer, based on alleged violations of 42 U.S.C. § 1983 (for violations of the First Amendment Rights to Free Speech, Political Belief, Assembly and Association; and Fourteenth Amendment Rights to Equal Protection, and Procedural/ Substantive Due Process), Titles VII and XI of the Civil Rights Act, The New Jersey Constitution, the Conscientious Employee Protection Act, N.J.S.A. 34:19-1, *et seq.*, ("CEPA"), the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 *et seq.*, ("NJLAD"), the Public Employers Relations Act, N.J.S.A. 34:13A-1, and State common law tort claims for civil conspiracy and intentional infliction of emotional distress caused by his employer and several senior officers. Defendant Frank Corrente ("Corrente") now moves to dismiss Plaintiff's complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). Defendants MCSD and Sheriff Edward Rochford ("Rochford") have joined in Corrente's motion. For the reasons set forth below Defendants' motion is granted in part, and denied in part.

### *FACTS AS ALLEGED IN THE COMPLAINT*

Plaintiff is an employee of the Morris County Sheriff's Department, Bureau of Corrections, and has been employed as a corrections officer since 1988. (Compl. at 2.) On or about 1994, Plaintiff was elected delegate of the PBA Union at his workplace, and in 2000, he was elected president of the union. (Compl. at 8.) Plaintiff alleges that his numerous union

2

related activities often put him at odds with the administration of his employer MCSD, namely

Defendants McGrane (the Warden of the Jail), Corrente (a supervisory officer in Plaintiff's chain

of command), and Rochford.  (Compl. at 8)

Plaintiff claims that during the course of his service as an elected union official, he

advocated numerous contentious issues on behalf of the union including: opposition to the

Sheriff's attempts to privatize the Jail, opposition to the administration's attempts to transfer the

transportation of inmates from Corrections to Sheriffs Officers, representation of individual

officers as to on-the-job grievances, challenging the Warden's Standard Operating Procedure,

publicly opposing the jail staffing plan at Freeholder meetings, bypassing the chain of command

to raise complaints with the Sheriff, Enlisting State PBA Assistance, publicly opposing efforts by

defendants to remove protective vests from approved and compensated clothing worn by

corrections officers, assisting the local PBA in filing an unfair labor practices complaint against

the MCSD, communicating with County Freeholders about Union problems at the Jail, and

refusing to lie for the administration in its defense of discrimination cases brought by minority

officers.  (Compl. at 8-10)

Plaintiff alleges he was subjected to numerous acts of retaliation and intimidation for

advocating those issues on behalf of the union.  In particular, Plaintiff alleges he was forced to

suffer: removal from the prestigious Sheriff's Emergency Response Team ("SERT"), verbal

berating and criticism both in public and private by Defendants McGrane and Corrente, removal

from the Sheriff's Labor Assistance Program ("SLAP") which was a preferential working

position, removal from steady day shifts, denied time off to go to State PBA offices for union

related work, warnings about his union activity, suspension for posting memos about the

protective vest issue, assignment to "relief officer" posts (the least desirable in the jail), being

passed over for promotion to Corporal and Sergeant, a widely publicized internal affairs

investigation, denial of suspension of punishment while pending appeal, and denial of

preferential work details for which he had seniority.  (Compl. at 12-13).

On April 6, 2005, Plaintiff filed a complaint with this Court.  Corrente, MCSD, and

Rochford now move to dismiss pursuant to Fed.R.Civ.P. 12(b)(6).


### DISCUSSION


A. Standard for Dismissal - 12(b)(6)

Corrente argues that Plaintiff's complaint should be dismissed pursuant to Fed. R.Civ. P.

12(b)(6) Failure to State a Claim Upon Which Relief May be Granted.

Rule 12(b)(6) states in part :

> Every defense, in law or fact, to a claim for relief in any pleading, whether a
> claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the
> responsive pleading thereto if one is required, except that the following defenses
> may at the option of the pleader be made by motion: ...(6) failure to state a claim
> upon which relief can be granted...


Pursuant to Rule 12(b)(6), a complaint shall be dismissed for failure to state a claim upon

which relief can be granted only if a court finds "it appears beyond doubt that the plaintiff can

prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson,

355 U.S. 41, 46 (1957); Johnsrud v. Carter, 620 F.2d 29, 33 (3d Cir. 1980); Craftmatic Sec. Litig.

v. Kraftsow, 890 F.2d 628, 634 (3d Cir. 1989).  Allegations contained in the complaint will be

4

accepted as true, <u>Cruz v. Beto</u>, 405 U.S. 319, 322 (1972), and the plaintiff shall be "given the benefit of every favorable inference that can be drawn from those allegations." <u>Schrob v. Catterson</u>, 948 F.2d 1402, 1405 (3d Cir. 1991).  The court is limited to facts contained and alleged in the complaint and may not consider facts raised for the first time by parties in legal briefs.  <u>Hauptmann v. Wilentz</u>, 570 F. Supp. 351, 364 (D.N.J. 1983), aff'd without opinion, 770 F.2d 1070 (3d Cir. 1985).  The Court will accept the alleged facts as true and view them in the light most favorable to the non-moving party.  <u>Doug Grant, Inc. v. Greate Bay Casino Corp.</u>, 232 F.3d 173, 183-84 (3d Cir. 2000).   The question the court must answer is not whether Plaintiff will prevail, but rather whether there are any circumstances that would entitle him to relief. <u>Hishon v. Spalding</u>, 467 U.S. 69, 73 (1984).

In the present case, Corrente has cited numerous reasons for dismissal of each count contained in Plaintiff's complaint.

B. <u>Title VII</u>

Corrente contends that Plaintiff cannot maintain a Title VII claim because he failed to file a complaint with the Equal Employment Opportunity Commission ("EEOC") and receive a "right to sue" letter within 180 days from the date of the alleged violation pursuant to 42 U.S.C.A. § 2000 *et al.*  Additionally, Corrente notes that Plaintiff is bringing claims as a union member, not as a member of a protected class under title VII, Title XI, or 42 U.S.C. § 1983 as alleged.

In his opposition brief, Plaintiff states that he does not allege any violation of his rights under Title VII based upon race, creed or national origin.  Plaintiff states that "to the extent that

Defendant's motion deals with an allegation that Plaintiff alleges violation of his rights under Title VII based upon race, creed, or national origin, the Defendants are incorrect."

Accordingly, based upon Plaintiff's concession to the motion on this claim, all claims for relief under Title VII will be dismissed.


C.  First Amendment

Defendants argue that Plaintiff's Count I claim of violation of the First Amendment rights to free speech and association does not allege any conduct by defendants that even if true would constitute such a violation.  Defendants cite the limitations on the right to freedom of speech by public employees as reason to the dismiss that claim, and the failure of Plaintiff to file his freedom of association claim with the National Labor Relations Board as reasons to dismiss that claim.

"A public employee has a constitutional right to speak on matters of public concern without fear of retaliation." Baldassare v. New Jersey, 250 F.3d 188, 194 (3d Cir.2001).  "While the government's role as employer ... gives it a freer hand in regulating the speech of its employees than it has in regulating the speech of the public at large, this hand cannot act with impunity." Id.  Therefore, "public employers cannot silence their employees simply because they disapprove of the content of such speech." Id.  Courts employ a three step analysis when balancing the First Amendment rights of public employees against competing interests of their employers: (1) plaintiff must establish that the activity in question was protected (if it is purely personal in nature then it is not, if it is a matter of public concern then it is); (2), if the speech in question is protected, plaintiff must demonstrate that his interest in the speech outweighs the

6

state's countervailing interest as an employer in promoting the efficiency of the public services it provides through its employees; and (3) if a public employee's speech concerns a matter of public concern, and the balance of harm weighs in favor of the employee's expression, "plaintiff must then show that the protected activity was a substantial or motivating factor in the alleged retaliatory action."  Id. at 195.

In Brennan v. Norton, et.al., 350 F.3d 399 (2003), the Court of Appeals for the Third Circuit reviewed this Court's dismissal of several claims filed under § 1983 by a Teaneck Firefighter who claimed he was subject to acts of retaliation for speaking out against the Township Manager and several officials of the Fire Department.  Brennan claimed among other things that he: (1) publicly opposed the Township's decision to close two of the four fire stations in the town, (2) informed Township residents that the fire sprinklers at the police station violated the fire code, (3) publicly challenged the Township Manager's proposal to replace the sub-code official with a non-fireman, (4) filed a formal complaint regarding the reluctance of the Town to requisition proper uniforms and pants for the firemen, and (5) informed the New Jersey Department of Labor and Health about the presence of asbestos in the Town's fire stations.  Id. at 414.  As a result of his actions, Brennan claimed that he was subjected to retribution in the form of: harassment, intimidation, given improper assignments, denial of holiday leave, being given menial/ labor intensive assignments for raising safety issues, involuntary transfer, suspension for reasons other officers would not be, denial of overtime pay, false accusations, and denial of seniority status. Id. at 409-410.  This Court had held that issues (1) through (3) were of public concern, but that (4) and (5) were not.  In performing a detailed analysis of First Amendment claims by public servants, the Court of Appeals held that there was no public concern in (4)

7

because the complaint alleged the uniforms were not delivered "quick enough," not that they were unsafe or not provided by defendants.  Id. at 416.  The Court of Appeals also found that (5) was a matter of public concern because the public has an interest in whether or not its public safety laws are being violated.  Id. at 415.  The instant case raises issues similar or identical to those which the Court of Appeals addressed in Brennan.

Defendants claim that Plaintiff's activity was not protected and fails to meet step one of this analysis.  The Court must examine each act that Plaintiff alleges to determine whether, as a matter of law, it concerned a matter of public concern entitled to First Amendment protection.

Plaintiff alleges that he was subject for retaliation based on the following acts:  opposition to the Sheriff's attempts to privatize the Jail, opposition to the administration's attempts to transfer the  transportation of inmates from Corrections to Sheriffs Officers, representation of individual officers as to on-the-job grievances, challenging the Warden's Standard Operating Procedure, publicly opposing the jail staffing plan at Freeholder meetings, bypassing the chain of command to raise complaints with the Sheriff, Enlisting State PBA Assistance, publicly opposing efforts by defendants to remove protective vests from approved and compensated clothing worn by corrections officers, assisting the local PBA in filing an unfair labor practices complaint against the MCSD, communicating with County Freeholders about Union problems at the Jail, and refusing to lie for the administration in its defense of discrimination cases brought by minority officers.  (Comp. at 8-10)

(1) Opposition to the Sheriff's attempts to privatize the Jail.  This is a matter of public concern.  Plaintiff alleges that he publicly opposed Defendant Rochford's attempts to privatize the jail by speaking publicly against privatization at union meetings, freeholders meetings, and in

the local newspapers.  Although this matter certainly affects Plaintiff in his role as a corrections

officer, this issue is obviously more than a personal one.  A decision to restructure the jail in this

fashion would affect a great many people both in and out of the Sheriff's Department.  Staffing,

financial considerations, safety of the inmates and the surrounding communities, and the overall

effectiveness of such a drastic change is certainly a matter of public concern.  Moreover

Plaintiff's personal motives are not dispositive in deciding this issue as stated in Brennan, 399

F.3d at 412-413, as long as the matter concerns the public as well as the speaker.  Citing Rankin

v. McPherson, 483 U.S. 378, 387 (1987).

(2) Opposition to the administration's attempts to transfer the transportation of inmates

from Corrections to Sheriffs Officers.  This is an example of an internal matter which might be

important to members of the Sheriff's Department as it directly affects the work they will be

assigned, but does not qualify as a matter of public concern.  Both sheriffs and corrections

officers are public servants, presumably trained to some degree in the arts of law enforcement,

and will provide an adequate degree of safety, and responsibility to the public at large.  The

matter of which of these bodies will be assigned the task of ferrying prisoners is an internal

matter to be decided by the MCSD.  Opposition of this by Plaintiff does not constitute protected

speech.

(3)   Representation of individual officers as to on-the-job grievances.  Personal

grievances are an internal matter that is not of public concern.  Plaintiff does not allege with any

specificity the type of grievances he has assisted others with.  Perhaps under certain

circumstances Plaintiff's assistance in this regard would constitute protected speech, but based

on the pleadings before the Court, it does not.

9

(4)   <u>Challenging the Warden's Standard Operating Procedure</u>.  This is another internal matter which is not of public concern.  Plaintiff has not alleged inefficiencies or some sort of disservice to the public as a result of the Warden's current SOP.  To the contrary, it appears, at least as far as the pleadings are concerned,  that the only problems the current SOP is causing are with Plaintiff, and perhaps some other employees at the jail.

(5) <u>Publicly opposing the jail staffing plan at Freeholder meetings</u>.  Jail staffing is a matter of public concern.  Plaintiff alleges that the MCSD and the administration attempted to change staffing levels, and that he publicly opposed this plan at Freeholder meetings.  The number of guards and corrections officials present at the jail is a matter of particular concern with regards to the safety of the detainees, inmates, citizens in the surrounding areas, as well as the employees inside the jail.  Additionally, staffing levels are an important factor which  affect the achievement of the goals of the penal system which should be to rehabilitate the inmates into becoming productive members of society, re-integrating those inmates into society upon their release from confinement, and reducing the rate of recidivism.  If there is not enough staff to ensure that these matters are handled properly, then the public should be greatly concerned.  Plaintiff's expression in this regard constitutes protective speech.

(6) <u>Bypassing the chain of command to raise complaints with the Sheriff</u>.  This is another internal matter which is not of public concern.

(7) <u>Enlisting State PBA Assistance</u>.  This is a matter of unique concern to the employees of MCSD.  Enlisting union assistance does not concern the public at all.  If Plaintiff alleged with some sort of specificity, the publicly related reasons he felt it was appropriate to enlist the help of

the PBA, then this might have constituted some sort of protected speech.

(8) <u>Protective Vests</u>.  Plaintiff alleges he publicly opposed efforts by defendants to remove protective vests from approved and compensated clothing worn by corrections officers. This is a matter of safety which should be of concern to the public.  In <u>Brennan</u>, the Court held that because plaintiff did not address any safety issues regarding uniforms and protective gear but only voiced concern about not receiving them quickly enough, his speech was not a matter of public concern.  350 F.3d at 416.  Here, Plaintiff alleges that the administration considered removing protective vests altogether.  This apparent safety issue should be of concern to the public.  Additionally, the reasons for removing the vests from the clothing allowance, e.g. public financial difficulties, may be a matter of concern to the public as well.  Plaintiff's speech in this regard was protected.

(9) <u>Assisting the local PBA</u>.  Plaintiff further alleges that he assisted the PBA in filing an unfair labor practices complaint against the MCSD for "union busting" and improper/ unlawful institution of a restrictive "sick time" policy.  This is another wholly unique concern to employees at the MCSD and not the public.

(10) <u>Communicating with County Freeholders about Union problems at the Jail</u>.  Without further specificity it is impossible to state that "problems at the jail" are matters of public concern merely because they were addressed to Freeholders.  This speech was not protected.

(11) <u>Refusing to lie</u>.  Plaintiff claims he refused to lie for the administration in its defense of discrimination cases brought by minority officers.  Plaintiff alleges that Defendants Rochford, Corrente, and the MCSD were Defendants in those discrimination cases, and that he was asked to

commit perjury.  If true, this conduct would constitute a serious offense.  However, no speech concerning it is alleged and therefore it does not constitute a First Amendment infraction.

As a result of this analysis, the speech alleged in paragraphs (1),(5), and (8) constitutes protected speech.  The complaint alleges with sufficient specificity that the speech is of sufficient gravity to outweigh the State's countervailing interest as an employer, and that there is a causal connection between the retaliatory conduct and Plaintiff's alleged speech.  This is sufficient to deny the motion to dismiss the First Count of the Complaint even though most of the conduct in which Plaintiff engaged is not protected by the First Amendment.  It is unnecessary to deal with Plaintiff's First Amendment right of association claim.  It will be necessary during discovery to review the nature of the claim to determine if it is a subject that should be left in the hands of New Jersey Courts or administrative agencies pursuant to one or another of the preemption doctrines.

Accordingly, Plaintiff's motion to dismiss the First Count will be denied.

D. Fourteenth Amendment Claims

Substantive and Procedural Due Process

Defendants also argue that the second count of Plaintiff's complaint should be dismissed because Plaintiff's allegations are insufficient to support a Fourteenth Amendment violation.  In the Second Count, Plaintiff alleges he was deprived of equal protection and his right to procedural and substantive due process rendering Defendants liable pursuant to 42 U.S.C. § 1983.

The due process clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law."  The Supreme Court has found that in addition to requiring adequate state procedures, the clause has a substantive component. Nicholas v. Pennsylvania State University, 227 F.3d 133, 139 (3d Cir. 2000) (citing Planned Parenthood of S.E. Pennsylvania v. Casey, 505 U.S. 833, 846-47, 112 S. Ct. 2791, 120 L. Ed. 2d 674 (1992).  "The substantive component of the Due Process Clause limits what governments may do regardless of the fairness of procedures that it employs, and covers government conduct in both legislative and executive capacities." Boyanowski v. Capital Area Intermediate Unit, 215 F.3d 396, 399 (3d Cir. 2000).  A property interest that is protected by the Fourteenth Amendment's due process Clause may not be taken away by the state for reasons that are "arbitrary, irrational, or tainted by improper motive," Woodwind Estates, Ltd. v. Gretkowski, 205 F.3d 118, 124 (3d Cir. 2000) (quoting Bello v. Walker, 840 F.2d 1124, 1129 (3d Cir. 1988)), or by means that "shock the contemporary conscience." Boyanowski, 215 F.3d at 401 (quoting County of Sacramento v. Lewis, 523 U.S. 833, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998)).  To prevail on a substantive due process claim, plaintiffs "must establish as a threshold matter that they have a protected property interest to which the Fourteenth Amendment's due process protection applies." See Nicholas, 227 F.3d at 139-40.  Not all property interests entitled to procedural due process protection are protected by the substantive due process clause. 227 F.3d at 140 (quotation omitted).  "While property interests are protected by procedural due process even though the interest is derived from state law rather than the Constitution, substantive due process rights are created only by the Constitution." Regents of University of Michigan v. Ewing, 474 U.S. 214, 229, 106 S. Ct. 507, 88 L. Ed. 2d 523 (1985) (Powell, J., concurring).  Thus,

whether the property interest falls under the ambit of substantive due process protection "depends on whether that interest is 'fundamental' under the United States Constitution." See Nicholas, 227 F.3d at 140 (citations omitted).

If the property interest is "fundamental" under the Constitution, "then substantive due process protects the plaintiff from arbitrary or irrational deprivation, regardless of the adequacy of procedures used.  If the interest is not 'fundamental,' however, the governmental action is entirely outside the ambit of substantive due process and will be upheld so long as the state satisfies the requirements of procedural due process." Nicholas, 227 F.3d at 139-40.  In Nicholas, the Court of Appeals held that tenured public employment is not a fundamental property interest entitled to substantive due process protection. 227 F.3d at 142.  If tenured employment itself is not entitled to substantive due process protection, then the damages claimed by plaintiff in the instant case (being passed over for promotion, being removed from prestigious teams and preferential work details, being given undesirable assignments, being suspended, and being berated and criticized by senior officers during the course of his public employment at MCSD) certainly do not fall under the category of deprivation of property or liberty interests afforded substantive due process protection.  "The federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies... The due process clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions." Bishop v. Wood, 426 U.S. 341, 349-50, 96 S. Ct. 2074, 48 L. Ed. 2d 684 (1976).

Likewise, in order for plaintiff to state a claim for deprivation of his procedural due process rights, he must also allege that (1) the individual interest he claims to be deprived of is

within the Fourteenth Amendment's protection of life, liberty, or property, and (2) the procedures

available to him did not provide due process of law.  Farber v. City of Paterson, 2004 U.S.

LEXIS 13060 (D.N.J. 2004).  Plaintiff's complaint in this regard also fails to get past the first

step of this analysis because he has not alleged deprivation of any legitimate property interest in

his complaint.

Equal Protection

The Court of Appeals for the Third Circuit has ruled that the standard to be applied to

equal protection claims is as follows:

"where the case does not involve a protected class which is entitled to strict
or heightened scrutiny; accordingly, we will apply the general rule:

that legislation is presumed to be valid and will be sustained if the
classification drawn by the statute is rationally related to a legitimate state
interest." City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432,
439-40, 87 L. Ed. 2d 313, 105 S. Ct. 3249 (1985). See Massachusetts Bd. of
Retirement v. Murgia, 427 U.S. 307, 313, 49 L. Ed. 2d 520, 96 S. Ct. 2562
(1976) (holding rational basis standard appropriate for analyzing claim of
unconstitutional deprivation of public employment, where no fundamental
right or suspect class is concerned); see also United Bldg. & Constr. Trades
Council of Camden v. Mayor of Camden, 465 U.S. 208, 219, 79 L. Ed. 2d
249, 104 S. Ct. 1020 (1984) (stating that "there is no fundamental right to
government employment for purposes of the Equal Protection Clause"). The
plaintiffs bear the burden of proof on this issue, and so must show that the
requirements imposed by law or regulation "so lack rationality that they
constitute a constitutionally impermissible denial of equal protection." Rogin
v. Bensalem Township, 616 F.2d 680, 688 (3d Cir. 1980).  In considering this
issue, we bear in mind the Court's statement that a statute or regulation
should not be overturned on equal protection grounds "unless the varying
treatment of different groups or persons is so unrelated to the achievement of
any combination of legitimate purposes that we can only conclude that the
legislature's actions were irrational." Vance v. Bradley, 440 U.S. 93, 97, 59

15

L. Ed. 2d 171, 99 S. Ct. 939 (1979)."

In the present case, Plaintiff has neither claimed to be part of a protected class nor asserted legislation or regulations which are not rationally related to a legitimate state interest. Plaintiff's allegation that he has been deprived of rights guaranteed by the Fourteenth Amendment, and deprived of equal protection and his right to procedural and substantive due process is so general in nature as to allege nothing at all.  In the First Count sufficient facts were alleged to support a substantive due process claim of a violation of plaintiff's free speech rights protected by the First Amendment.  The Second Count, if it incorporates the claim as a Fourteenth Amendment violation, is duplicative of the First Count.  The Second Count alleges no other Fourteenth Amendment claim and the motion to dismiss it will be granted.

E. CEPA Claim

Defendants additionally argue that the Third Count of Plaintiff's complaint, which alleges a violation of New Jersey's Conscientious Employee Protection Act, N.J.S.A. 34:19-15, ("CEPA") is time barred by the statute of limitations.  The statute of limitations provision provides that upon violation of the act, an aggrieved employee may within one year, institute a civil action in court.  N.J.S.A. 34:19-5.  Plaintiff's claims cover a span of more than seventeen years of employment.  The most recent claim is alleged to have occurred sometime in mid-2004; however, there is no specificity with regards to the date contained in the complaint.  Additionally, Corrente claims that Plaintiff's complaint  is "void of any specificity with regards to acts of discrimination."

16

In his answering brief, Plaintiff clarified the very limited CEPA claim he is advancing, asserting that "the actions that trigger the CEPA complaint occurred in mid-2004, and the filing of this complaint occurred early in 2005, clearly within the one year statute of limitations." (Plaint.'s Br. at 26) Plaintiff sets forth in his affidavit in opposition to the motion the acts constituting the basis for his CEPA claim:[1]

> "23.  As for my C.E.P.A. claim, in the Summer of 2004, I met with Sheriff Rochford to discuss with him what I believe to be the unlawful use of sick time and vacation time by certain retiring officers while at the same time denying current, active duty officers the right to utilize all sick time and vacation time that was afforded to them under our union contract.
>
> 24.  I specifically mentioned to the Sheriff that Warden Corrente and Undersheriff McGrane were encouraging employees to wait and utilize their sick and vacation time at the end of their tenure with the MCSD.  I specifically mentioned to him that certain officers who were being allowed to use accumulated sick and vacation time while they were not actually sick or vacationing - merely awaiting their retirement date.
>
> 25.  It was commonly known by me that officers with legitimate sick time needs were being denied the use of that sick time in order to falsify the sick time records of the facility by McGrane and Corrente in order to be more efficient to the Board of Chosen Freeholders... than [sic] they actually were. In actuality, both of these techniques were perpetuating a fraud upon the Board of Chosen Freeholders and were encouraging falsification of records for the purposes of securing (pre-retirement) sick time monies that were not proper.
>
> 26.  Almost immediately after meeting with the Sheriff, I was told by (Defendant) Corrente that "if you think that going to (State PBA President Madonna) or Sheriff Rochford is going to help, it is not going to." Immediately thereafter, Corrente denied me the assignment to the law librarian post (a preferential post in the facility) and, instead gave it to a junior officer.
>
> 27.  The actions as to the sick time policy and the retaliation I suffered as a

---

[1]These allegations will be considered on the motion to dismiss even though they are not alleged in the complaint.  The reason to consider them is that in normal circumstances, a plaintiff will be given leave to cure a defective complaint by means of an amended complaint.  Fed R. Civ. P. 15(a).

result of the sick time policy are separate and distinct [from] other acts of retaliation in this case.  In particular, In November 2004, I attempted to appear before the Board of Freeholders to raise union concerns and to raise retaliation concerns with the Board of Freeholders.  Ultimately, I spoke to three members of the Board of Freeholders.  The issues involved in that discussion did not focus on the improper/ unlawful use of sick time.  Rather, they focused on retaliation and work safety issues.

28.  McGrane and Corrente also accused me of going to the Freeholders about the protective vest issue several months earlier.

29.  When I finally appeared for the meeting with the Board of Freeholders, they brought the rest of the retaliation against me including the filing of trumped-up suspension charges."

Plaintiff's Aff. at 5-6.

According to Plaintiff's affidavit, this is the total substance of his CEPA claim.  His complaint will be deemed amended to include theses allegations.  Consequently, none of the allegations of events that preceded sometime in the summer of 2004 constitute a part of Plaintiff's CEPA claim.  It will be necessary first to address Corrente's statute of limitations claim with respect to the claim, and if the claim survives that defense, it will be necessary to determine if the complaint as amended accurately states a CEPA claim.

The act upon which Plaintiff bases his CEPA claim is "[meeting] with Sheriff Rochford to discuss with him what I believed to be unlawful use of sick time denying current, active duty officers the right to utilize all sick leave and vacation leave that was afforded to them under our union contract.  I specifically mentioned to the Sheriff that Warden Corrente and Undersheriff McGrane were encouraging employees to wait and utilize their sick time at the end of their tenure with the MCSD.  I specifically mentioned to him that certain officers who were being allowed to use the accumulated sick and vacation time were not actually sick or vacationing -

merely awaiting their retirement date.  It was commonly known by me that officers with

legitimate sick time needs were being denied the use of that sick time in order to falsify the sick

time records of the facility by McGrane and Corrente in order to be more efficient to the Board of

Chosen Freeholders... than [sic] they actually were."

The only alleged retaliation set forth in the affidavit constituting the second prong of a

CEPA claim is "Corrente denied me the assignment to the law librarian post (a preferred post in

the facility), and instead gave it to a junior officer.  Clearly this occurred within the one year

statute of limitations period, and Corrente's statute of limitations defense does not bar this claim.

There remains the question whether as a matter of law the CEPA claim as now alleged by

Plaintiff is based upon an act that CEPA protects and, if so, whether in response to that act,

Corrente took an adverse employment action against him.

N.J.S.A. § 34:19-3 provides as follows:

Retaliatory action prohibited

An employer shall not take any retaliatory action against an employee
because the employee does any of the following:

a. Discloses, or threatens to disclose to a supervisor or to a public body an
activity, policy or practice of the employer or another employer, with whom
there is a business relationship, that the employee reasonably believes is in
violation of a law, or a rule or regulation promulgated pursuant to law, or, in
the case of an employee who is a licensed or certified health care
professional, reasonably believes constitutes improper quality of patient care;

b. Provides information to, or testifies before, any public body conducting an
investigation, hearing or inquiry into any violation of law, or a rule or
regulation promulgated pursuant to law by the employer or another employer,
with whom there is a business relationship, or, in the case of an employee
who is a licensed or certified health care professional, provides information

to, or testifies before, any public body conducting an investigation, hearing or inquiry into the quality of patient care; or

c. Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes:

(1) is in violation of a law, or a rule or regulation promulgated pursuant to law or, if the employee is a licensed or certified health care professional, constitutes improper quality of patient care;

(2) is fraudulent or criminal; or

(3) is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment.

Addressing a CEPA claim the court "must first, as a matter of law, 'find and enunciate the specific terms of a statute or regulation, or the clear expression of public policy, which would be violated if the facts alleged are true." Falco v. Community Medical Center, 296 N.J. Super 298, 315 (App. Div. 1997). After the court makes that finding, the plaintiff must prove: I) he/she reasonably believed that the employer's conduct had either violated a law, rule or regulation or was incompatible with a clear mandate of public policy, ii) he/she disclosed or threatened to disclose the activity to a supervisor or public body, iii) he/she has been subject to discharge, suspension or demotion or other adverse employment action in the terms and conditions of employment, and iv) there existed a causal connection between the whistle blowing activity and the adverse employment action.  Falco, 296 N.J. Super. At 315-317.

In the present case, Plaintiff passes the first two steps of this analysis.  Defendants are alleged to have perpetuated a fraud on the County.  Plaintiff has sufficiently alleged that he reasonably believed Defendants violated a statute or regulation, or the clear expression of public

policy, and that he threatened to expose this to the Sheriff, the State PBA, or others.  However,

Plaintiff has not alleged that he has been subject to discharge suspension or demotion or other

adverse employment action which was significant enough to give rise to a CEPA claim.  He has

not satisfied the third step of the above outlined analysis.   Being denied assignment to the law

librarian post, a preferential post in the facility, does not constitute "adverse employment action

in the terms and conditions of employment."

     The New Jersey courts have held that "other adverse employment action" in the context

of CEPA "must be read to mean an action similar in severity to discharge, demotion, or

suspension, each of which has a serious impact on employment."  Greene v. New Jersey, Docket

No. A-6397-0273 (App. Div. 2004) (unpublished opinion) at 6.  For example, a transfer without

demotion or suspension is not an adverse employment action.  Id. At 6,7.  Additionally, in

Hancock v. Borough of Oaklyn, 347 N.J. Super. 350 (App. Div. 2002), two police officers

asserted a CEPA claim charging that the defendants had retaliated against them for reporting

potential criminal conduct by another officer.  Plaintiffs alleged retaliation in the form of

disciplinary charges, numerous orders, demands, instructions, and other actions similar in nature

to the actions cited by Plaintiff in the instant case.  The Appellate Division upheld the trial

court's finding that this did not constitute "other adverse employment action" as required by the

CEPA statute.  Id. At 360-361.  Plaintiff's claim of receiving retaliation by being denied the post

at the library similarly lacks severity.  Accordingly Plaintiff's cause of action under the CEPA

statute (Count III of the Complaint) will be dismissed.

F.  New Jersey Tort Claims Act

Defendants additionally argue that Plaintiff is further precluded from asserting any claims under state law since he failed to file proper notice pursuant to the New Jersey Tort Claims Act, N.J.S.A. 59:8-1 *Et. Seq.*  Under the statute, a notice of claim must be served upon a public entity within ninety days of the accrual of a claim.  Failure to meet this requirement is an absolute bar to recovery against a public entity or its employees.  *Id.*  Defendants allege that the Fourth, Fifth and Seventh Counts are Torts covered under the Act, and that Plaintiff does not allege that he complied with this notice requirement.

Although Plaintiff cites alternative reasoning, the New Jersey Supreme Court has recognized that claims brought under 42 U.S.C. 1983 are not subject to or prohibited by the New Jersey Tort Claims Act, because of the Supremacy Clause.  Fuchilla v. Layman, 109 N.J. 319 (1988).  Thus, the First Count of the complaint cannot be dismissed on these grounds; however, tort claims based upon common law assertions fall precisely within the terms of the Act.  Plaintiff has not alleged that he filed the required notice.  Therefore, the Court will grant the motion to dismiss the Fifth and Seventh Counts.

With regards to the Fourth Count, which alleges a New Jersey Constitutional free speech claim, a Court in this district has determined that "the legislature never intended to subject constitutionally-based torts, such as civil rights claims and claims for inverse condemnation, to the notice-of-claim provisions of the TCA."  Garlanger v. Verbeke, 223 F. Supp. 2d 596, 604 (D.N.J. 2002); (Citing Estate of McGrath v. North Jersey District Water Supply Commission, 224 N.J. Super. 563, 570, 540 A.2d 1350 (Law Div. 1986) noting that the "Tort Claims Act does

22

not apply to several of [plaintiff's] causes of action, such as inverse condemnation and violation of civil rights.")  Accordingly, the New Jersey Tort Claims Act does not bar Plaintiff from proceeding on the Fourth Count.

The Fourth Count alleges a violation of the New Jersey Constitution's guaranteed right to free speech.  The same considerations govern the disposition of this claim as governed Plaintiff's First Amendment fee speech claims contained in the First Count.  Certain of Plaintiff's public statements constitute protected speech, and consequently the motion to dismiss the Fourth Count will be denied.

## G.  Failure to Exhaust Remedies

Defendants also claim that Plaintiff has not alleged that before filing his lawsuit he exhausted his administrative remedies required by all but one of the various statutes referenced in the Sixth Count.  Defendants argue that the New Jersey Public Employee Relations Act, N.J.S.A. 34:13A-5.4©, Department of Personnel Guidelines, N.J.A.C. 4A:2, and Civil Service Act, N.J.S.A. Title 11A all mandate exhaustion of administrative remedies through various agencies before filing a complaint in court.

The Sixth Count of the complaint alleges that "defendants intentionally and wrongfully violated Plaintiff's statutory rights as guaranteed by N.J.A.C. Title 4A, N.J.S.A. Title 11A, the New Jersey Law Against Discrimination [N.J.S.A. 10:5-1 et seq.], and the Employer-Employee Relations Act [N.J.S.A. 34:13A-1]."  The three statutes addressed in the defendants' argument all require exhaustion of administrative remedies prior to filing a formal complaint in court.

The New Jersey Employer-Employee Relations Act 34:13A et. al. mandates that all claims arising under it will be disposed of via the Public Employment Relations Commission.

> The commission shall have exclusive power as hereinafter provided to prevent anyone from engaging in any unfair practice listed in subsections a. and b. above. Whenever it is charged that anyone has engaged or is engaging in any such unfair practice, the commission, or any designated agent thereof, shall have authority to issue and cause to be served upon such party a complaint stating the specific unfair practice charged and including a notice of hearing containing the date and place of hearing before the commission or any designated agent thereof...

N.J.S.A. 34:13A-5.4

Additionally, the grievance procedures and employee protection against reprisal procedures for Titles 4A and 11A are outlined in N.J.A.C. 4A:2:2-3.4, 3.5 and 4A:2-5.1, 5.2.  Plaintiff has not alleged in his complaint that he exhausted the administrative remedies available to him for any of the reprisal actions or for the other mistreatment he was allegedly subjected to by defendants.  A complaint which alleges a violation of Title 4A will be properly dismissed for failure to exhaust administrative remedies.  Ferraro v. City of Long Branch, 314 N.J. Super. 268, 287, 714 A.2d 945, 955 (App. Div. 1998). "The DOP is, after all, entrusted with the implementation of the Civil Service Act. N.J.A.C. 4A:1-1.2(a). Under these circumstances, courts are obliged to defer to the primary jurisdiction of the executive body, referring such issues for administrative resolution." Melani v. County of Passaic, 345 N.J.Super. 579, 590, 786 A.2d 133, 140 (App. Div. 2001).

The Sixth Count also asserts a claim under the New Jersey Law Against Discrimination, N.J.S.A. § 10:5-1 *et seq* ("NJLAD"), in Count Six.  Under NJLAD the exhaustion of administrative remedies is not required.  N.J.S.A. § 10:5-13 provides that an aggrieved party may *either* file a discrimination claim with the NJDCR or initiate a formal civil action.  N.J.S.A. §

10:5-13 (1993). Those alternate remedies, however, are mutually exclusive and N.J.S.A. § 10:5-27 provides that: "the [administrative] procedure herein provided shall, while pending, be exclusive; and the final determination therein shall exclude any other action, civil or criminal, based on the same grievance of the individual concerned." N.J.S.A. § 10:5-27 (1993).  Lemke v. International Total Services, Inc. 56 F.Supp.2d 472, 482 (D.N.J. 1999).  If Plaintiff has filed an NJLAD complaint with an administrative agency, defendants can move for summary judgement on the NJLAD claim.  It is difficult to discern the basis for an NJLAD claim in the factual allegations of the complaint, but that claim will be permitted to stand until its basis (or lack thereof) is established in discovery.

Consequently, the motion to dismiss the Sixth Count will be granted except as to a claim brought pursuant to NJLAD.

### *CONCLUSION*

_____For all the reasons stated above, Defendants' motion to dismiss the Second, Third, Fifth, Sixth (except for the claim filed pursuant to NJLAD), and the Seventh Counts will be granted. Defendants' motion to dismiss the First, Fourth, and Sixth Count (to the extent it alleges an NJLAD claim) will be denied.

s/Dickinson R. Debevoise
Dickinson R. Debevoise, U.S.S.D.J.

Dated: November 1, 2005

25