NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| HENRY RUIZ,<br><br>      Plaintiff,<br><br>  v.<br><br>MORRIS COUNTY SHERIFF'S DEPARTMENT,<br>FRANK CORRENTE, EDWARD ROCHFORD,<br>RALPH McGRANE, and JONH DOES 1 through 10<br><br>      Defendants. | CIVIL ACTION NO. 05-1825<br>(DRD)<br><br>OPINION |

Appearances

PARAGANO & RICHLAN, P.C.
Vincent Paragano, Esq.
5 Seney Drive
Bernardsville, New Jersey 07924
    *Attorneys for Plaintiff*

JACOBS ROSENBERG, LLC
Roger B. Jacobs, Esq.
Gateway Four, 3rd Floor
100 Mulberry Street
Newark, New Jersey 07102
    *Attorneys for Defendant Frank Corrente*

*OPINION*

**DEBEVOISE, Senior District Judge**

    The Court's prior opinions of November 1, 2005 and January 5, 2006 identify the parties and explain the nature of the complaint in great detail. Plaintiff, a correctional officer at the Morris County Correctional Facility ("MCCF" or "the Jail"), is an employee of the Morris

County Sheriff's Department ("MCSD"). Defendants are MCSD, Morris County Sheriff Edward Rochford ("Rochford"), Chief Ralph McGrane ("McGrane"), MCCF Warden Frank Corrente, and John Does 1 through 10. The Court granted in part defendants' motions to dismiss and to grant summary judgment during prior proceedings. The remaining Counts of Plaintiff's complaint allege that defendants: (1) deprived Plaintiff of his constitutional right to free speech in violation of 42 U.S.C. § 1983 (First Count) and Article One paragraphs 6, 18, and 19 of the New Jersey Constitution (Fourth Count); and (2) violated the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et. seq. (Sixth Count). Defendant Frank Corrente ("Corrente") now moves for partial summary judgment dismissing the Sixth Count of the Complaint pursuant to Fed. R. Civ. P. 56. Corrente argues that Plaintiff's allegations regarding the NJLAD claim are not supported by any facts on record. For the following reasons, Corrente's motion will be denied.

## Facts

Plaintiff has been employed as a corrections officer at the MCCF since August 9, 1988. He is the current union delegate for PBA Local 298 ("the union"), the official bargaining unit for the corrections officers at the jail. Plaintiff has played a very active role in the union for the last twelve years, having also served as the President of the union in 2000. The remaining counts of the Complaint allege that defendants: (1) wrongfully punished Plaintiff because he publicly opposed attempts to privatize and change staffing levels at the jail, in violation of Plaintiff's constitutionally guaranteed right to free speech; and (2) violated the NJLAD. As pointed out in the November 1, 2005 opinion, the NJLAD portion of the complaint contained in the Sixth

2

Count does not allege with any specificity, how Defendants violated the NJLAD.[1] The Sixth Count of the Complaint states:

> Defendants intentionally violated Plaintiff's statutory rights as guaranteed by... New Jersey Law Against Discrimination (N.J.S.A. 10:5-1 et seq.)... and other State and Federal Laws. As a direct, foreseeable, and proximate result of the statutory violations of Defendants, Plaintiff has suffered and will continue to suffer damages including but not limited to loss of promotion pay and seniority benefits, severe emotional distress, humiliation, embarrassment, physical harm and severe anxiety.

Following the November 1, 2005 opinion, Corrente's attorney wrote to Plaintiff's attorney on three separate occasions requesting explanation of the basis for the NJLAD claim. Plaintiff's attorney did not respond. On January 4, 2006, Corrente filed the present motion for partial summary judgment dismissing the Sixth Count of the Complaint. In response to Corrente's motion, Plaintiff has provided an affidavit, dated January 30, 2006, which details the basis for the NJLAD claim. In his affidavit Plaintiff alleges that he was subject to anger and humiliation by Corrente and other members of the MCSD "administration" because of his efforts to assist minority and perceived homosexual members of the union. (Ruiz. Aff. ¶ 2). Plaintiff states that he provided initial representation of Union members who accused the administration of "retaliation" at grievance hearings, and that he helped minority and female officers obtain key positions in the union. (Ruiz Aff. ¶¶ 6-7). Plaintiff also claims that he assisted several officers in investigating their claims of racial and sexual discrimination against the MCSD and the other defendants. (Ruiz Aff. ¶ 9). As the union delegate, one of Plaintiff's responsibilities was to approve legal representation for those officers filing discrimination and

---

[1] "It is difficult to discern the basis for an NJLAD claim in the factual allegations of the complaint, but that claim will be permitted to stand until its basis (or lack thereof) is established in discovery." Ruiz v. Morris County, et al., No. 05-1825, slip. op. at 25 (D.N.J. Nov. 1, 2005).

3

other claims against the administration. (Ruiz Aff. ¶ 4). Plaintiff argues that his approval of union funded legal representation for various officers filing these types of claims was another reason the administration mistreated Plaintiff. (Ruiz Aff. ¶ 4).

In support of his NJLAD claim, Plaintiff highlights his assistance of MCSD officers in the following cases: (1) the cases of <u>O'Brien v MCSD</u> 98-236 and <u>Wiggins v. MCSD</u> 96-1336 wherein Plaintiffs alleged claims of racial and sexual discrimination by the administration; (2) the case of Officer Eugene Tolliver, wherein Officer Tolliver, an African American, was "improperly charged" with associating with an inmate; and (3) the case of Officer Lisa Knowlton, wherein Officer Knowlton was perceived to be a lesbian by the administration and was forced to use sick time for psychological leave. (Ruiz Aff. ¶¶ 9-14). Plaintiff alleges that the administration retaliated against him because of the assistance he provided to the above listed officers. (Ruiz Aff. ¶ 15). The alleged retaliation listed by Plaintiff includes: change of job assignments, threats of suspension and /or termination, actual suspensions, and "special observations" by Internal Affairs. (Ruiz Aff. ¶ 15).

Plaintiff has also provided the Court with the Amended Complaint filed by Officer Knowlton and the Notice of Claim submitted by Officer Tolliver. Officer Knowlton's complaint contains allegations of gender discrimination, sexually hostile work environment, and retaliatory and disparate treatment at the jail, and names Corrente as one of the defendants. Officer Tolliver's Notice of Claim lists a racially hostile work environment, and violations of the NJLAD as some of the bases for his claims, which were filed against the same defendants listed by Plaintiff in the present case.

### *DISCUSSION*

I.       Standard for Summary Judgement

Summary Judgment is appropriate when the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(c). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. Id. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. Id. In deciding whether there is a disputed issue of material fact, the court must view the evidence in favor of the nonmoving party by extending any reasonable favorable inference to that party; in other words, "[T]he nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in [that party's] favor." Hunt v. Cromartie, 526 U.S. 541, 552 (1999), quoting, Anderson, 477 U.S. at 255. But where the nonmoving party bears the burden of persuasion at trial, "the burden on the moving party may be discharged by 'showing' - that is, pointing out to the District court - that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (U.S. 1986).

II.      NJLAD

The New Jersey Law Against Discrimination ("NJLAD") N.J.S.A. § 10:5-12 states that it shall be an unlawful employment practice or unlawful discrimination:

5

> d. **For any person to take reprisals against any person because that person has opposed any practices or acts forbidden under this act or** because that person has filed a complaint, testified or assisted in any proceeding under this act or **to coerce, intimidate, threaten or interfere with any person** in the exercise or enjoyment of, or **on account of that person having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by this act.**
>
> e. For any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this act, or to attempt to do so.

(emphasis added). In order to state a claim for retaliation under the NJLAD, an employee must show that: (1) he engaged in protected conduct known to the employer; (2) he was subjected to an adverse employment decision; and (3) there was a causal link between the protected activity and the adverse decision. Abramson v. William Paterson College of New Jersey 260 F.3d 265 (3rd Cir. 2001); Marrero v. Camden County Bd. of Social Services, 164 F.Supp.2d 455 (D.N.J. 2001). Although Plaintiff failed to detail the elements of his NJLAD claim in the Complaint, he has done so in his affidavit.

In looking at the first step of the NJLAD analysis, Plaintiff alleges that he was subject to retaliation, at least in part, due to the assistance he rendered to officers filing discrimination claims against Corrente and the other defendants. O'Brien, Wiggins, Knowlton and Tolliver have all asserted claims for activities protected under the NJLAD (racial or sexual discrimination) and Corrente is named as participating in the claims of sexual and racial discrimination contained in Knowlton's amended complaint and Tolliver's Notice of Claim. Via his affidavit, Plaintiff asserts that he engaged in protected activity by assisting the aforementioned officers in investigating and filing their claims against Corrente and the other

6

members of the MCSD Administration.[2]  While Corrente claims he had no knowledge of Plaintiff's assistance in this regard, this is a question of fact which will be considered in the light most favorable to the nonmoving party for the purposes of this motion.  Plaintiff has shown that he was engaged in protected activity known by the employer.

As for the second step of the NJLAD analysis, Plaintiff alleges in his affidavit that Corrente and the other defendants regarded him as "anti-administration" and retaliated against him for assisting those officers.  He claims that the retaliation he endured for assisting those officers consisted of adverse employment decisions in the form of changes of job assignments, threats of suspension and/or termination, actual suspensions, "special observation" by internal affairs, and the attempt to alienate Plaintiff from fellow employees/ union members.  In order to constitute an "adverse employment action," the retaliatory conduct alleged must be "serious and tangible" enough to alter an employee's compensation, terms, conditions, or privileges of employment, deprive his future employment opportunities, or otherwise have a "materially adverse" effect on his status as an employee.  Hargrave v. County of Atlantic, 262 F.Supp.2d 393, 427 (D.N.J. 2003).  The acts alleged by Plaintiff clearly fall under this definition.

The third element of the NJLAD analysis is causation.  Plaintiff argues that Corrente's retaliatory actions were taken to punish Plaintiff's protected assistance to the other officers.  While there is no documentation or details describing when these various retaliatory acts occurred, which acts Corrente was directly responsible for or had knowledge of, and how they

---

[2] These complaints were filed over a span of ten years.  Wiggins filed his complaint in 1996, and Lombardi's recently Amended Complaint, which contains the NJLAD claim of sexual discrimination, was filed in January 2006.

are related directly to his actions in assisting the other officers, these questions can and hopefully will be answer during subsequent discovery.  Corrente argues that as a supervisor, he is not responsible as an employer for discriminatory acts under the MCSD.  Under the NJLAD, a supervisory employee may be liable for discrimination for aiding and abetting an employer's violation.  See Cardenas v. Massey, 269 F.3d 251 (3rd Cir. 2001).   In order to be held liable however, the supervisory employee must have had personal knowledge or involvement in the acts that fall under the NJLAD.  Santiago v. City of Vineland, 107 F. Supp.2d 512 (D.N.J. 2000).  As it stands, Plaintiff alleges there is a causal link and Corrente alleges that Plaintiff was punished for unrelated disciplinary issues.  This question of fact must also be considered in the light most favorable to Plaintiff for the purposes of this motion.

Despite the heavily disputed facts that will ultimately decide the outcome of the NJLAD claim, Plaintiff has provided sufficient evidence to withstand the present motion.  Corrente's motion for summary judgment will be denied on this basis.

## *CONCLUSION*

For all the reasons stated above, Corrente's motion for partial summary judgment dismissing the Sixth Count of the Complaint will be denied.

/s/ Dickinson R. Debevoise
Dickinson R. Debevoise, U.S.S.D.J.

Dated: March 17, 2006